UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEVEN P. ENDRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-883 (RBW) |
| | ) | |
| AIR CANADA,[1] et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The plaintiff, Steven P. Endres, proceeding pro se, brings this action against twenty-five defendants[2] alleging numerous violations of § 1 of the Sherman Act, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), a range of criminal laws forming the predicate acts under RICO, and the United States Constitution. See generally Complaint ("Compl."), ECF No. 1. The plaintiff's claims largely revolve around an alleged "[airline] carrier cartel[] conspiracy to restrain trade by price fixing and market allocating reservations to land and takeoff at airports, and by a group boycott of the reservation market." See Compl. at iv. Currently

---

[1] James Uthmeier is the current Attorney General of the State of Florida and is therefore substituted for Ashley Moody as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] The defendants named in the plaintiff's Complaint are as follows: Air Canada, Air France-KLM S.A. ("Air France"), Alaska Air Group, Inc. ("Alaska Airlines"), Amazon.com, Inc. ("Amazon"), American Airlines Group Inc. ("American Airlines"), Atlas Air Worldwide Holdings, Inc. ("Atlas Air"), Delta Air Lines, Inc. ("Delta"), Deutsche Lufthansa AG ("Lufthansa"), FedEx Corporation ("FedEx"), Frontier Group Holdings, Inc. ("Frontier Airlines"), Hawaiian Holdings, Inc. ("Hawaiian Airlines"), International Consolidated Airlines Group S.A. ("IAG"), JetBlue Airways Corporation ("JetBlue"), LATAM Airlines Group S.A. ("LATAM"), Rand Parent, LLC ("Rand"), Southwest Airlines, Co. ("Southwest Airlines"), Spirit Airlines, Inc. ("Spirit Airlines"), United Airlines Holdings, Inc. ("United Airlines"), United Parcel Service, Inc. ("UPS"), James Uthmeier in his official capacity as Attorney General of the State of Florida ("Attorney General of Florida"), City of New York, New York ("New York City"), City of Newark, New Jersey ("Newark"), Metropolitan Washington Airports Authority ("MWAA"), Port Authority of New York and New Jersey ("PANYNJ"), and the United States of America ("United States"). See Compl. at i–iii.

pending before the Court, inter alia,[3] is the defendants' motion to dismiss pursuant to Federal Rule 12(b)(1).  See Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction ("Defs.' Mot."), ECF No. 97.  Upon careful consideration of the parties' submissions,[4] the Court concludes that it must grant the defendants' motion to dismiss.

## I.   BACKGROUND

The following factual allegations are accepted as true for purposes of resolving the motion to dismiss and are derived from the plaintiff's Complaint unless otherwise specified.  The plaintiff alleges that "Congress [has been] search[ing] for a competitive method to allocate to [airline] carriers the scarce seasonal supplier reservations required for the use of the public's airspace at [ ] airports with excess market demand."  Compl. ¶ 3.  In an attempt to fulfill Congress' objective, the plaintiff alleges that, through his company Exhaustless, Inc. ("Exhaustless"), he "developed [a] competitive multi-sided market allocation[—called the 'Aviation 2.0 Operating Standard']—which upgrades the supplier-carrier, the consumer-passenger, and the consumer-cargo reservation systems to allocate the congestion-free capacity of airspace reservations with a demand-calibrated premium that is designed to ensure that prices

---

[3] Also pending are the plaintiff's two motions to strike several defendants from the motion to dismiss.  See Plaintiff's Motion to Strike the Motion to Dismiss of Defendants City of Newark, MWAA and PANYNJ ("Pl.'s 1st Mot. to Strike"), ECF No. 107; Plaintiff's Motion to Strike Motion of Non-Parties ("Pl.'s 2d Mot. to Strike"), ECF No. 108.

[4] In addition to the filings already identified, the Court also considered the following submissions in rendering its decision: (1) the Plaintiff's Amended Opposition to Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 157, (2) the Defendants' Reply in Further Support of Their Motion to Dismiss for Lack of Subject-Matter Jurisdiction ("Defs.' Reply"), ECF No. 124, (3) the Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Strike the Motion to Dismiss of Defendants Newark, MWAA and PANYNJ (ECF No. 107) ("Newark's, et al.'s Opp'n to 1st Mot. to Strike"), ECF No. 117, (4) the Plaintiff's Reply to Opposition to Plaintiff's Motion to Strike Motion of Defendants Newark, MWAA, and PANYNJ ("Pl.'s 1st Mot. to Strike Reply"), ECF No. 125, (5) the Opposition of Defendants Alaska Airlines Group, Inc., Atlas Worldwide Holdings, Inc. and United Airlines Holdings, Inc. to Plaintiff[']s[] Motion to Strike Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Alaska Airlines', et al.'s Opp'n to 2d Mot. to Strike"), ECF No. 111, and (6) the Plaintiff's Reply to Opposition of Defendants Alaska Air Group, Inc., Atlas Worldwide Holdings, Inc. and United Airlines Holdings, Inc. to Plaintiff's Motion to Strike Motion of Non-Parties ("Pl.'s 2d Mot. to Strike Reply"), ECF No. 120.

meet market clearing levels." Id. ¶¶ 5, 29. The plaintiff then "offered his market-clearing service to [airline] carriers, but every [d]efendant [c]arrier continued to obtain [their] grandfathered supplier reservations for free rather than bid; and continued to not compete for supplier reservations claimed by other carriers." Id. ¶ 6. To the date of the filing of this case, the plaintiff alleges that "[c]arriers have continued to claim exclusive and proprietary rights to airspace reservations and have de facto received that privilege with the aid of an illegal subsidy from the [United States] D[epartment of Transportation or] [(']DOT[')] at seven airports at which it limits the volume of flight reservations, which it then 'grants' to carriers for free every scheduling season pursuant to the [International Air Transport Association[5] or (']IATA[')] [World Slot Guidelines or (']WSG[')]." Id. ¶ 8.

Taking issue with how the airspace reservation market has operated, the plaintiff has initiated a significant amount of litigation before various courts and agencies either on behalf of Exhaustless, or in his own name—each case having been summarily dismissed. See Exhaustless, Inc. v. Fed. Aviation Admin., 931 F.3d 1209, 1210 (D.C. Cir. 2019) (denying the plaintiff's petition for review of an FAA interim order for lack of standing); Exhaustless, Inc. v. Fed. Aviation Admin., 809 F. App'x. 3, 4 (D.C. Cir. 2020) (denying the plaintiff's petition for review of FAA rulemaking denial order); Endres v. United States, No. 23-1536C, 2023 WL 8294786, at *1 (Fed. Cl. Nov. 30, 2023) (granting motion to dismiss pro se complaint for lack of standing to pursue claims on behalf of corporation); Endres v. Moody et al., No. 12-cv-12051 (FDS), 2023 U.S. Dist. LEXIS 230474, at *5 (D. Mass. Dec. 22, 2023) (same) (citing Endres v. United States, 2023 WL 8294786, at *1).

---

[5] The IATA "is the trade association for the world's airlines, representing some [three-hundred and forty] airlines [and] over 80% of global air traffic. [It] support[s] many areas of aviation activity and help[s] formulate industry policy on critical aviation issues." About Us, IATA, https://www.iata.org/en/about/ (last visited Mar. 10, 2025).

After the most recent dismissal by the District Court of Massachusetts, the plaintiff then initiated this case. See generally Compl. (filed Mar. 24, 2024). On July 17, 2024, all but one[6] of the parties appeared for a status conference to set a briefing schedule, after which the defendants filed their motion to dismiss for lack of subject matter jurisdiction on July 30, 2024. See Defs.' Mot. at 1. Briefing on the motion ultimately concluded with the defendants filing their reply in support of their motion on September 13, 2024. See Defs.' Reply at 1.

## II.   STANDARD OF REVIEW

### A.   Federal Rule 12(b)(1)

"Federal district courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "it is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such

---

[6] The sole party that did not appear at the status conference, defendant IAG, has continually taken the position that it was not properly served by the plaintiff—even after several attempts were made by the plaintiff to serve it in response to an Order issued by the Court. See Order at 1 (July 18, 2024), ECF No. 95 (ordering the plaintiff to show cause why IAG should not be dismissed as a defendant for failure to perfect service on it).

materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted). And, the Court "need not accept bare legal conclusions nor unsupported inferences." Campaign Legal Ctr. v. Fed. Election Comm'n, No. 22-cv-3319 (CRC), 2024 WL 4263853, at *5 (D.D.C. Sept. 23, 2024) (citing Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).

### III.   ANALYSIS

The defendants argue that "[the p]laintiff now asserts substantially similar claims as he did in the District of Massachusetts, but attempts to bring them in his own name—much as he ultimately attempted to do in his case against the United States in the Court of Federal Claims." Memorandum of Law in Support of Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction ("Defs.' Mem.") at 6, ECF No. 97-1. Because he similarly brings those claims here in his own name but on behalf of Exhaustless, the defendants argue, "any alleged injury was suffered by Exhaustless because all the rights in the Aviation 2.0 Operating Standard belong to Exhaustless, not to [the p]laintiff." Id. The plaintiff responds that he "invested his time,

expertise, and money to solve the problem of a competitive market allocation of airspace reservations[,]" and thus, has suffered an injury.  Pl.'s Opp'n at 23.  The Court will address the parties' arguments in turn.[7]

## A. Whether the Plaintiff has Standing to Pursue Claims on Behalf of Exhaustless

The defendants argue that the plaintiff lacks standing to pursue his claims because he has failed to "demonstrate[] an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent.'"  Defs.' Mot. at 10–11 (quoting Lujan, 504 U.S. at 560).  Thus, the defendants argue that the plaintiff fails to articulate an injury sufficient to satisfy Article III standing.  See id. at 12.  The defendants also argue that the plaintiff likewise fails to demonstrate that he has shareholder standing "because he has not [shown] a 'particularized, nonderivative injury[ separate and distinct from Exhaustless].'"  Id. (quoting Harpole Architects, P.C. v.

---

[7] As an initial matter, the plaintiff's motions to strike several of the defendants from the motion to dismiss are without merit and will be denied.  As to Newark, MWAA, and PANYNJ, the plaintiff essentially requests that the Court strike these defendants on the basis that their counsel should be disqualified from the case due to their law firm's participation in IATA.  See generally Pl.'s 1st Mot. to Strike.  However, "disqualification of an attorney is a matter which rests within the sound discretion of the trial court," Headfirst Baseball LLC v. Elwood, 999 F. Supp. 2d 199, 204 (D.D.C. 2013) (Walton, J.) (quoting Derrickson v. Derrickson, 541 A.2d 149, 152 (D.C. 1988)), and "[d]isqualification of an attorney is a serious step[,]" Derrickson, 541 A.2d at 152 n.6.  Here, the plaintiff's arguments are woefully deficient of meeting the high bar for disqualification in this Circuit.  See Koller v. Richardson-Merrell Inc., 737 F.2d 1038, 1056 (D.C. Cir. 1984) ("Except in cases of truly egregious misconduct likely to infect future proceedings, other means less prejudicial to the client's interest than disqualifying the counsel of [the party's] choice are ordinarily available to deal with [alleged] ethical improprieties by counsel.").  Not only does the plaintiff fail to allege any Rule of Professional Conduct that may be applicable to his arguments for disqualification, he also fails to address why the defendants' counsel's law firm membership in a non-party trade association creates a conflict in this case.  See Headfirst, 999 F. Supp. 2d at 208 ("The scant nature of the existing factual record does not square with the high burden the [plaintiff] must satisfy to disqualify the [defendant]s' counsel of choice."); D.C. R. Prof'l Conduct 1.7(b) ("[A] lawyer shall not represent a client with respect to a matter if: (1) That matter involves a specific party or parties and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter[.]").

The plaintiff's arguments to strike Alaska Airlines, Atlas Air, and United Airlines are equally unavailing.  These defendants have each been served or otherwise have waived service and have each participated in the case from its inception.  See Notice of Appearance of M. Roy Goldberg at 1, ECF No. 35 (listing Alaska Airlines, Atlas Air, and United Airlines by the names identified by the plaintiff in his Complaint); Compl. at i–iii.  Thus, the names by which the defendants chose to identify themselves in their motion to dismiss is legally insignificant in this case.  See Alaska Airlines', et al.'s Opp'n to 2d Mot. to Strike at 2.  Accordingly, for all the above reasons, the Court denies the plaintiff's motions to strike the named defendants from the motion to dismiss.

Barlow, 668 F. Supp. 2d 68, 77 (D.D.C. 2009)). The plaintiff responds that his injury is derived from "the anticompetitive IATA WSG agreement" under 15 U.S.C. § 15(a) (antitrust) and 18 U.S.C. § 1964(c) (RICO). Pl.'s Opp'n at 20–21. Thus, the plaintiff concludes that "the common law doctrine of [the] 'shareholder standing rule' [is not] a defense to antitrust and RICO violations [and] that [it] undermines the statutory scheme of a regulated industry." Id. at 22.

"As the party invoking federal jurisdiction, the plaintiff[] bear[s] the burden of demonstrating that [he] ha[s] standing." TransUnion LLC v. Ramirez, 594 U.S. 413, 430–31 (2021). "Moreover, the plaintiff must demonstrate standing with respect to each claim and form of relief sought." Am. Freedom L. Ctr. v. Obama, 106 F. Supp. 3d 104, 108 (D.D.C. 2015) (Walton, J.) (citing Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 153 (2010)). To satisfy the standing requirement under Article III, "a litigant seeking to invoke the jurisdiction of a federal court must demonstrate that (1) [he] has suffered an injury-in-fact (2) which is caused by, or is fairly traceable to, the defendant's alleged unlawful conduct and (3) which is likely to be redressed by a favorable decision of the court." Wyo. Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 48 (D.C. Cir. 1999) (citing Lujan, 504 U.S. at 560). "The absence of any one of these three elements[—injury-in-fact, causation, and redressability—]defeats standing." Newdow v. Roberts, 603 F.3d 1002, 1010 (D.C. Cir. 2010) (citing Lujan, 504 U.S. at 561).

Here, the plaintiff has unquestionably failed to demonstrate an injury in fact sufficient to establish Article III standing by bringing these claims on behalf of Exhaustless. See Monbo v. Small Bus. Admin., 24-cv-1872 (APM), 2024 WL 5056377, at *1 (D.D.C. Dec. 10, 2024) ("The jurisdictional defect here is obvious: It is [the p]laintiff's company, not [the p]laintiff [him]self that [incurred an injury, if any.]"); Heyer v. Schwartz & Assocs. PLLC, 319 F. Supp. 3d 299, 305 (D.D.C. 2018) ("[T]he shareholder standing rule is properly categorized under the

7

label of Article III standing[.]"). The plaintiff specifically states that it was not him but Exhaustless that was denied "its right to hear competitive bids for that reservation from other carriers and to speak market prices (winning bids) to all market participants." Compl. ¶ 313. The plaintiff has therefore failed to satisfy his burden of showing that he personally has Article III standing to pursue this case, regardless of the fact that he has raised statutory antitrust and RICO claims. E.g., Cheeks v. Fort Myer Const. Co., 722 F. Supp. 2d 93, 109 (D.D.C. 2010) (quoting Vinci v. Waste Management, Inc., 80 F.3d 1372, 1375 (9th Cir. 1996) ("A shareholder of a corporation injured by antitrust violations has no standing to sue in his or her own name."); see Infanti v. Scharpf, 570 F. App'x 85, 88 (2d Cir. 2014) ("[I]t is well-settled that shareholders, officers, and employees lack standing to bring a civil RICO claim for harm to their corporation."); see also Hancock v. Urban Outfitters, Inc., 830 F.3d 511, 514 (D.C. Cir. 2016) ("[T]he legislature 'cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing[.]'" (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016)). Thus, similar to the prior cases brought by the plaintiff that were dismissed for lack of standing, the Court must likewise dismiss this case for lack of Article III standing.[8]

Accordingly, it is hereby

**ORDERED** that the Plaintiff's Motion to Strike the Motion to Dismiss of Defendants City of Newark, MWAA and PANYNJ, ECF No. 107, is **DENIED**. It is further

---

[8] Although defendant IAG did not join the motion to dismiss because it maintains that it was never served the Complaint, for all the reasons indicated as to the other defendants, the Court also dismisses this case against it sua sponte for lack of subject-matter jurisdiction. See Poblete v. U.S. Marshals Servs., 207 F. Supp. 3d 1, 2–3 (D.D.C. 2016) ("[A] district court may dismiss a complaint sua sponte pursuant to Federal Rule of Civil Procedure 12(h)(3) when it is evident that the court lacks subject-matter jurisdiction."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added)). Accordingly, because the Court has determined that it does not have subject-matter jurisdiction to hear this case, the Court need not reach the question of whether IAG was properly served.

**ORDERED** that the Plaintiff's Motion to Strike Motion of Non-Parties, ECF No. 108, is **DENIED**.  It is further

**ORDERED** that the Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction, ECF No. 97, is **GRANTED**.  It is further

**ORDERED** that this case is **DISMISSED** for lack of subject-matter jurisdiction.  It is further

**ORDERED** that this case is **CLOSED**.

**SO ORDERED** this 10th day of March, 2025.

                REGGIE B. WALTON
                United States District Judge